# EXHIBIT WW

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENISE PAYNE, | **FILED ELECTRONICALLY** |
| Plaintiff, | **DECLARATION OF JULIE WEAVER** |
| v. | Civil Action No. 18-cv-1442 (GTS/ML) |
| CORNELL UNIVERSITY, | |
| Defendant. | |

Julie Weaver, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that:

1. I was employed by Defendant Cornell University ("Cornell") in Human Resources ("HR") on its main campus in Ithaca, New York from early in December, 2011 until June 30, 2019, most recently in the position of Assistant Director of Human Resources in the Cornell SC Johnson College of Business ("College of Business"). I resigned from that position and moved with my spouse to Virginia. I worked remotely from Virginia through August 31, 2019 to finish up some projects, and then I ended my employment with Cornell. I have personal knowledge of the facts set forth in this declaration based on my 8 years of experience in HR at Cornell, as described in more detail below.

2. I make this declaration at the request of attorneys for Cornell to document certain interactions I had with Plaintiff Denise Payne ("Ms. Payne") while we both were employed at Cornell.

3. At the time I first met Ms. Payne in 2016, she was working part-time as a Research Aide III in the Business Simulation Lab ("BSL") in the Johnson Graduate School of Management.

4. I was invited to attend a meeting with Ms. Payne by my colleague Kathy Doxey, who was then Director of Human Resources for the Johnson Graduate School of Management. The meeting had been scheduled for Ms. Doxey to discuss BSL's concerns about Ms. Payne's performance, plans for restructuring the BSL, and whether her career goals might line up with other positions that were or may become available. The agenda was adjusted to include discussion of the mechanics for taking medical leave as well as Cornell's short-term and long-term disability benefits after Ms. Payne notified Ms. Doxey that she had been diagnosed with breast cancer. I was invited to the June 23, 2016 meeting to cover the medical leave and disability benefits portions of the agenda.

5. Ms. Payne's diagnosis came at a time of turmoil. Not only was the BSL going to be restructured, but Cornell was in the process of merging three schools into one college to consolidate overlapping programs, administration, and infrastructure. The Johnson Graduate School of Management, the Dyson School of Applied Economics and Management, and the School of Hotel Administration merged to create the College of Business, effective July 1, 2016.

6. We had the meeting with Ms. Payne on June 23, 2016, and after I explained the medical leave and disability benefits she may be eligible for, she explained that she did not expect her treatments to require significant time off.

7. That did not turn out to be the case. Ms. Payne took a series of short-term disability leaves pursuant to University Policy 6.9 (Time Away From Work) for surgery and treatment in the second half of 2016. Records document those short-term leaves, including July 5-11, August 4-8, August 29-September 2, September 12-16, and September 26-30. A true and complete copy of University Policy 6.9 is attached as Exhibit E to the Statement of Material

2

Facts submitted in support of Cornell's motion for summary judgment ("Statement of Material Facts").

8. While on that last short-term leave, Ms. Payne was offered a new position of Data Analyst in the newly formed College of Business (a promotion from her previous role), and she accepted the position. She then took an extended medical leave from October 13, 2016 through January 12, 2017, also under University Policy 6.9.

9. This 3-month medical leave was at full pay, resulting from a combination of Cornell's standard benefits package which provided Ms. Payne paid leave time for vacation as well as health and personal ("HAP") time, Cornell's short-term disability benefits, and catastrophic leave time donated anonymously by other employees pursuant to University Policy 6.9. Records document that 18 different employees in the College of Business volunteered to make donations of their own accrued, unused health and personal leave time in response to a list-serve email (to full-time benefits eligible College of Business employees) from me on September 21, 2016 about a fellow employee in need. I sent the email when HR realized that Ms. Payne would likely run out of her own accrued time off and exhaust her eligibility for leave time while she still had need to be out on medical leave. I personally and privately informed Ms. Payne of the list-serve request for donations in an email dated September 22, 2016. True and complete copies of my September 21, 2016 list-serve email and my September 22, 2016 email to Ms. Payne are attached as Exhibits TT and M, respectively, to the Statement of Material Facts.

10. A total of 66 days of accrued health and personal time were donated in response to my message, and made available by Cornell to meet Ms. Payne's needs during this leave and her future needs. I administered the distribution of donated time to her, and she was paid at the salary rate of her new position. As is customary, I provided Ms. Payne donated time when she

needed it but held the remainder of the days in reserve (so that if she did not need all of the donated time, HR could provide it to another employee in need). An example of how I administered the donated time is set forth in an email exchange with unit supervisor Cindy Allen between January 10, 2017 and January 12, 2017, a true and complete copy of which is attached as Exhibit FF to the Statement of Material Facts.

11. Ms. Payne was cleared to return to work without restrictions effective January 12, 2017, and she did return to work to begin her new job responsibilities at the agreed 30 hours per week.

12. Due to ongoing treatment needs, Ms. Payne required flexibility in her work schedule to attend to doctor's appointments and recovery needs. University Policy 6.6.13 (Flexibility in the Workplace) is designed to enable employees to balance personal and professional responsibilities by working remotely at times, at the discretion of their supervisors. Ms. Payne took advantage of this policy to arrange a Flexible Work Arrangement-Agreement with her supervisor, Tammy Lindsay, the first one of which was entered in February 2017 ("First Flex Agreement"). A true and complete copy of University Policy 6.6.13 is attached as Exhibit G to the Statement of Material Facts. A true and complete copy of the First Flex Agreement is attached as Exhibit I to the Statement of Material Facts.

13. Ms. Payne subsequently reported unexpected complications with treatment and was taken out of work by her physician for the period of February 22-26, 2017. Although her physician cleared her to return to work on February 27, Ms. Payne reported that she had shingles and her physician had restricted her from being around pregnant women. A co-worker in the unit was pregnant, so she inquired of me about a remote work arrangement on a full-time basis while she had shingles.

4

14. I was aware of concerns in the unit that she had received little training time and her supervisor was running out of projects and tasks that she could complete remotely. I sought advice from Cornell's Medical Leaves Administration staff about how to accommodate this unique situation, and Ms. Payne was permitted to work remotely until her physician cleared the shingles restriction and returned her to work in the office on March 7, 2017. I sent an email to Ms. Lindsay on February 27, 2017 explaining the accommodation, as the final link in an exchange of emails on this topic, a true and complete copy of which is attached as Exhibit GG to the Statement of Material Facts.

15. After her cancer treatments were completed, Ms. Payne's needs changed, and Cornell entered a Second Flex Agreement with her in May 2017 that authorized flexibility "when needed" for medical issues. A true and complete copy of the Second Flex Agreements is attached as Exhibit J to the Statement of Material Facts.

16. Notwithstanding her flexible work schedule, Ms. Payne continued to have conflicts with her supervisors over her use of time, and in July 2017 she sought a formal disability accommodation pursuant to University Policy 6.13 (Disability Accommodation Process for Faculty and Staff). A true and complete copy of University Policy 6.13 is attached as Exhibit F to the Statement of Material Facts. A true and complete copy of the email exchange on July 5, 2017 between Ms. Payne and Jill Tubbs in Medical Leaves Administration providing instructions for how to make the accommodation request is attached hereto as Exhibit P to the Statement of Material Facts.

17. Around this same time, Ms. Payne complained that she did not have enough accrued time off to allow her to receive medical treatments, so I transferred another 20 days of donated time to her. These 20 days represented the last of the 66 donated days, all of which had

been distributed to Ms. Payne so she could continue to take time at full pay to attend to her needs. A copy of my July 6, 2017 email to Ms. Payne informing her of the transfer, together with additional information about the formal accommodation process, is attached as Exhibit KK to the Statement of Material Facts.

18. After her request for accommodation was approved by Cornell on August 2, 2017, Kathy Doxey and I attended a meeting on August 14, 2017 regarding implementation of Ms. Payne's accommodation in the workplace, along with unit supervisors Tammy Lindsay and Lucinda Allen. I followed up with an email on August 16, 2017 summarizing the terms discussed for implementation.

19. Following multiple emails exchanged regarding implementation of Ms. Payne's accommodation, Cornell entered a Third Flex Agreement with her in August 2017 to document the terms ultimately agreed upon for her accommodation. A true and complete copy of the August 2017 email exchange is attached as Exhibit MM to the Statement of Material Facts, and a true and complete copy of the Third Flex Agreement is attached as Exhibit K to the Statement of Material Facts.

20. In September 2017, I had another email exchange with Ms. Payne in which she thanked HR for enforcing her formal accommodation request and noted that she was no longer getting "harassment when I request time off," but she informed me that she had contacted the Equal Employment Opportunity Commission ("EEOC") after our meeting on August 14 and she listed the issues she contacted them about. A true and complete copy of the September 2017 email exchange is attached as Exhibit OO to the Statement of Material Facts.

21. Ms. Payne continued to work under the Third Flex Agreement until a decision was made by the College of Business to eliminate the Business Analytics unit and lay off both Ms. Payne and Ms. Lindsay, who by November 2017 were the only two employees in the unit.

22. I devoted significant time and energy to assist Ms. Payne to help her resolve issues in the workplace, to inform her of the benefits Cornell accorded to employees who need medical leave time, and to implement Cornell's policies surrounding use of time, flexibility in the workplace, and disability accommodations.

23. Ms. Payne's layoff took effect January 2, 2018. She was a candidate for two open position searches that I was involved with at the College of Business at that time. She interviewed for both positions but was not selected, as a candidate with more suitable job skills and applicable experience was selected for each position. I interacted with Ms. Payne in connection with her applications and interviews for the open positions in January 2018, but have not interacted with her since that time.

24. I was informed in March 2018 that Ms. Payne had filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination against Cornell over the period February 1, 2017 through March 13, 2018. I assisted Cornell to prepare a comprehensive response to her allegations, including many of the emails that I exchanged with Ms. Payne and with her supervisors regarding the issues described in this Declaration. I was informed that the EEOC dismissed her Charge in August 2018, after finding insufficient evidence to conclude that any violation of law occurred.

25. I was informed that Ms. Payne started a lawsuit in November 2018.

DATED:   February 25, 2020

_____
Julie Weaver