**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DENISE PAYNE,**                                     **Civil Action No. 18-cv-1442 (GTS/ML)**

                    **Plaintiff,**

        **v.**

**CORNELL UNIVERSITY,**

                    **Defendant.**
_____

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dated: April 14, 2020
        New York, New York

                                ANDREW MILTENBERG
                                GABRIELLE VINCI
                                Nesenoff & Miltenberg, LLP
                                363 Seventh Avenue
                                New York, New York 10001

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 2

I.    Legal Standard Applicable to Defendant's' Motion ................................................ 2

II.    Material Issues of Fact Preclude Dismissal of Plaintiff's Disability
Discrimination Claims .......................................................................................... 4

    A.  Plaintiff's Prima Facie Case ............................................................................ 4

        i. Inference of Discrimination ...................................................................... 5

        ii. Adverse Action .................................................................................... 8

    B.  Pretext .............................................................................................................. 10

III.  Material Issues of Fact Preclude Dismissal of Plaintiff's Hostile
Work Environment Claims .................................................................................. 13

IV.  Material Issues of Fact Preclude Dismissal of Plaintiff's Failure
to Accommodate Claims ...................................................................................... 15

V.    Material Issues of Fact Preclude Dismissal of Plaintiff's Retaliation Claims ............... 18

VI.  Defendant Improperly Seeks Summary Judgment on Plaintiff's
Claim for Damages .............................................................................................. 22

CONCLUSION ................................................................................................................ 23

**TABLE OF AUTHORITIES**

**Cases**                                                                                     **Page(s)**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 248 (1986) ................................................................. 3

*Arista Records LLC., v. Lime Grp., LLC.*,
    2011 WL 1542560, n.4 (S.D.N.Y. Apr. 21, 2011) ......................................... 23

*Batyreva v. New York City Dept. of Educ.,*
    2008 WL 4344583, (S.D.N.Y. Sept. 18, 2008)............................................. 21

*Bickerstaff v. Vassar Coll.*,
    196 F.3d 435, 448 (2d Cir. 1999)........................................................ 6

*Blundell v. Nihon Kohden Am.*,
    2017 WL 318842, (N.D.N.Y. Jan. 23, 2017) ......................................... 16, 19

*Boonmalert v. City of New York,*
    721 Fed.Appx. 29, 33 (2d Cir. 2018)................................................... 14

*Borkowski v. Valley Central Sch. Dis't,*
    63 F.3d 131, 143 (2d Cir. 1995)........................................................ 12

*Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*,
    411 F.3d 306, 314 (2d Cir. 2005)....................................................... 21

*Carrero v. New York City Hous. Autho.*,
    890 F.2d 569, 580 (2d Cir. 1989)....................................................... 23

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..................................................................... 3

*Chambers v. TRM Copy Ctrs. Corp.*,
    43 F.3d 29, 37 (2d Cir. 1994) ........................................................... 6

*Curran v. All Waste Sys., Inc.*,
    2000 WL 639999, (2d Cir. 2000)........................................................ 9

*Cusher v. Mallick*,
    2020 WL 109510, (N.D.N.Y. Jan. 9, 2020)........................................... 19, 20

*DeGeorge v. LTD Financial Servs., L.P.*,
    2008 WL 905913, (W.D.N.Y. Mar. 31, 2008)............................................. 23

iii

*Diallo v. Whole Foods Market Grp., Inc.*,
    2019 WL 140728, (S.D.N.Y. Jan. 9, 2019) .................................................................. 2

*Ellis v. Century 21 Dep't Stores*,
    975 F.Supp.2d 244, 271 (E.D.N.Y. 2013) ........................................................ 6

*Espinal v. Goord*,
    558 F.3d 119, 129 (2d Cir. 2009)..................................................................... 22

*Ewing v. Coca Cola Bottling Co. of N.Y., Inc.*,
    2001 WL 767070, (S.D.N.Y. June 25, 2001) ............................................... 13

*Fox v. Costco Wholesale Corp.*,
    918 F.3d 65, 71 (2d Cir. 2019)......................................................................... 4

*Gallo v. Prudential Residential Serv.*,
    22 F.3d 1219 (2d Cir. 1994)............................................................................. 2

*Graham v. Long Island R.R.*,
    230 F.3d 38, 40 (2d Cir. 2000)..................................................................... 5, 6

*Grana v. Potter*,
    2009 WL 425913, (E.D.N.Y. Feb. 19, 2009) ................................................. 8

*Grant v. Bethlehem Steel Corp.*,
    622 F.2d 43, 45 (2d Cir. 1980)....................................................................... 22

*Gray v. Onondaga-Cortland-Madison BOCES*,
    No. 5:16-cv-973 (NAM/TWD), 2020 WL 1029022, (N.D.N.Y. Mar. 3, 2020)................ 5

*Gorman-Bakos v. Cornell Coop. Extension*,
    252 F.3d 545, 554 (2d Cir. 2001)................................................................... 22

*Hampson v. State Farm Mut, Auto Ins. Co.*,
    2015 WL 12733387, (N.D.N.Y. Mar. 26, 2015) ...................................... 12, 19

*Hensel v. City of Utica*,
    No. 6:15-cv-0374 (LEK/TWD), 2020 WL 1451579 ..................................... 4, 5

*Hicks v. Baines*,
    593 F.3d 159, 165 (2d Cir. 2010).................................................................... 20

*Holcomb v. Iona Coll.*,
    521 F.3d 130, 137 (2d Cir. 2008).................................................................... 11

*Hulett v. City of Syracuse,*
   253 F.Supp.3d 462, 483 (N.D.N.Y. 2017) ........................................................ 4

*Jaroslawicz v. Seedman,*
   528 F.2d 727, 731 (2d Cir. 1975) ..................................................................... 3

*Jeffreys v. City of New York,*
   426 F.3d 549 (2d Cir. 2005) ............................................................................. 3

*Jones v. City of New York,*
   2020 WL 91532, (S.D.N.Y. Jan. 8, 2020) ..................................................... 18

*Joseph v. Leavitt,*
   465 F.3d 87, 90 (2d Cir. 2006) ........................................................................ 8

*Kessler v. Westchester Cnty. Dep't of Soc. Servs.,*
   461 F.3d 199, 205, 209-10 (2d Cir. 2006) ...................................................... 9

*Leung v. New York Univ.,*
   2010 WL 1372541, (S.D.N.Y. March 29, 2010) ........................................... 22

*Littlejohn v. City of New York,*
   795 F.3d 297, 312 (2d Cir. 2015) .................................................................... 7

*Mandell v. Cnty. of Suffolk,*
   316 F.3d 368, 379 (2d Cir. 2003) ............................................................. 7, 21

*McBride v. BIC Consumer Prod. Mfg. Co.,*
   583 F.3d 92, 100 (2d Cir. 2009) .................................................................... 16

*McCarthy v. Dun & Bradstreet Corp.,*
   484 F.3d 184 (2d Cir. 2007) ............................................................................ 3

*McDonnell Douglas Corp. v. Green,*
   411 U.S.792 (1973) .......................................................................................... 4

*McKenzie v. Nicholson,*
   2009 WL 179253, (E.D.N.Y. Jan. 26, 2009) ............................................... 21

*Meritor Sav. Bank, FSB v. Vinson,*
   477 U.S. 57, 64 (1986) .................................................................................... 8

*Murphy v. New York State Pub. Employees Federation,*
   2019 WL 4257261, (N.D.N.Y. Sept. 9, 2019) ..................................... 7, 11, 21

*Natofsky v. City of New York*,
921 F.3d 337, 348 (2d Cir. 2019).......................................................................... 11

*Noll v. Int'l Bus. Machines Corp.*,
787 F.3d 89, 94 (2d Cir. 2015)................................................................................ 16

*Opoku v. Brega*,
No. 15-cv-2213, 2016 WL 5730807, (S.D.N.Y. Sept. 30, 2016) ....................... 9

*Parker v. Columbia Pictures Indus.*,
204 F.3d 326, 338 (2d Cir. 2006).......................................................................... 12

*Patterson v. Cnty. of Oneida, New York*,
375 F.3d 206, 227 (2d Cir. 2004).......................................................................... 14

*Pealo v. AAF McQuay, Inc.*,
140 F.Supp.2d 233, 236 (N.D.N.Y. 2001) ........................................................... 4

*Phillips v. Bowen*,
278 F.3d 103, 109 (2d Cir. 2002)........................................................................... 14

*Polito v. Tri-Wire Eng'g Solutions, Inc.*,
699 F.Supp.2d 480, 492-93 (E.D.N.Y. 2010) ..................................................... 7

*Richardson v. New York State Dept. of Corr. Servs.*,
180 F.3d 426, 446 (2d Cir. 1999)........................................................................... 8

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
741 F.3d 11, 25 (2d Cir. 2012)............................................................................... 20

*Rodal v. Anesthesia Grp. Of Onondaga, P.C.*,
369 F.3d 113, 117 n. 1 (2d Cir. 2004) .................................................................. 4

*Rule v. Brine, Inc.*,
85 F.3d 1002, 1011 (2d Cir. 1996)......................................................................... 3

*Schiano v. Quality Payroll Sys., Inc.*,
445 F.3d 597, 605 (2d Cir. 2006) .......................................................................... 14

*Schwapp v. Town of Avon*,
118 F.3d 106, 110 (2d Cir. 1997)........................................................................... 3

*Shain v. Ctr. for Jewish History, Inc.*,
418 F.Supp.2d 360, 366 (S.D.N.Y. 2005)............................................................ 12

*Signer v. Tuffy*,
66 Fed. Appx. 232, 235 (2d Cir. 2003) ................................................................. 8

*Summa v. Hofstra Univ.*,
    708 F.3d 115, 128 (2d Cir. 2013).................................................................... 21

*Taddeo v. L.M. Berry & Co.*,
    526 Fed. Appx. 121, 122 (2d Cir. 2013) .......................................................... 3

*Teahan v. Metro-N. Commuter R.R. Co.*,
    951 F.2d 511, 516 (2d Cir. 1991)................................................................... 12

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
    663 F.3d 556, 569 (2d Cir. 2011)................................................................... 20

*Treglia v. Town of Manilus*,
    313 F.3d 713, 719 (2d Cir. 2002)..................................................................... 5

*Ventura Assoc., Inc. v. Internat'l Outsourcing Servs., Inc.*,
    2008 WL 2073628, (S.D.N.Y. May 14, 2008) .............................................. 23

*Wallace v. Suffolk Cnty. Police Dept.*,
    396 F.Supp. 251, 262 (E.D.N.Y. 2005) ......................................................... 21

*Walsh v. N.Y.C. Housing Auth.*,
    828 F.3d 70, 76 (2d Cir. 2016)....................................................................... 10

*Whidbee v. Garzarelli Food Specialties, Inc.*,
    223 F.3d 62, 70 (2d Cir. 2000)....................................................................... 15

*Williams v. Palladia, Inc.*,
    2009 WL 362100, (S.D.N.Y. Feb. 10, 2009) .................................................. 5

*Zagaja v. Vill. Of Freeport*,
    2015 WL 3507353 (E.D.N.Y. June 3, 2015) .................................................. 12

## INTRODUCTION

Plaintiff Denise Payne ("Plaintiff") respectfully submits this memorandum of law in opposition to defendant Cornell University's ("Defendant's") Motion for Summary Judgment.

Briefly, while working for Defendant in the Summer of 2016, Plaintiff was unfortunately diagnosed with breast cancer. Throughout her 15-month treatment plan, Plaintiff continued to work for Defendant and entered into several flexible work agreements with her then supervisor, Tammy Lindsay ("Lindsay") to hopefully allow her to continue working with accommodations for her cancer treatments. However, despite being approved for such work arrangements, Lindsay frequently refused to allow Plaintiff to avail herself of the terms of the flexible work agreements which permitted Plaintiff to work remotely from home or to have a flexible schedule. When Plaintiff complained that such actions were discriminatory to Defendant's human resources personnel, medical leaves personnel, and Lindsay's supervisor, Lucinda Allen ("Allen"), she was summarily ignored and even discouraged from seeking more formal accommodations. Indeed, even when Plaintiff finally received formal accommodations from Defendant, the harassment continued as Lindsay openly expressed her dissatisfaction with having to accommodate Plaintiff's disability any further.

Accordingly, Plaintiff commenced this action for disability discrimination, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act (the "ADA") and the New York State Human Rights Law (the "SHRL"). Unsurprisingly, Defendant denies Plaintiff allegations and seeks summary dismissal of Plaintiff's Complaint. For the reasons discussed in detail herein, Defendant's Motion for Summary Judgment should be denied.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff's Counter Statement of Material Facts pursuant to Local Rule 56.1, the Defendant's' Statement of Material Facts pursuant to Local Rule 56.1 where not disputed, the Declaration of Gabrielle M. Vinci, and all exhibits annexed thereto for a full recitation of the facts relevant to the determination of this motion. The following is but a high-level summary of the facts and evidence underlying Plaintiff's claims in the present action.

## ARGUMENT

## I.    Legal Standard Applicable to Defendant's' Motion

The Second Circuit has ruled that the granting of a motion for summary judgment is a drastic remedy, which must be used "sparingly." *Gallo v. Prudential Residential Serv.*, 22 F.3d 1219 (2d Cir. 1994). *See also*, *Diallo v. Whole Foods Market Grp., Inc.*, 2019 WL 140728, at *4 (S.D.N.Y. Jan. 9, 2019) (*citing Egelston v. State Univ. of Coll. at Geneseo*, 535 F.2d 754 (2d Cir. 1976)) ("Summary judgment is an extreme remedy that deprives the non-moving party of the right to present a case to the jury…"))). Thus, the Court "should not grant summary judgment unless 'it is quite clear what the truth is [and] that no genuine issue remains for trial.'" *Diallo v. Whole Foods Market Grp., Inc.*, 2019 WL 140728, at *4 (*quoting Auletta v.* Tully, 576 F. Supp. 191, 195 (N.D.N.Y. 1983)).

In making this determination, the court "must resolve all ambiguities, credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment, and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 484 F.3d 184 (2d Cir. 2007). A fact is "material" if it is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. Moreover, the burden is on the moving party to establish the absence of any material factual issues. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing a motion for summary judgment, "the judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). If there are any doubts as to the existence of a triable issue of fact or if a material issue of fact is arguable, summary judgment must be denied. *Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir. 1975).

Furthermore, the Second Circuit has cautioned that "[w]here an employer acted with discriminatory intent, direct evidence of that intent will only rarely be available, so affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Taddeo v. L.M. Berry & Co.*, 526 Fed. Appx. 121, 122 (2d Cir. 2013). For this reason, the Second Circuit has repeatedly cautioned against granting summary judgment in employment discrimination and retaliation cases because the employer's intent is often at issue and is difficult to determine. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997). Indeed, "in the context of employment discrimination cases, summary judgment is 'ordinarily inappropriate' because the allegations therein require exploration into an employer's motivation and intent for an employment decision." *Pealo v. AAF McQuay, Inc.*, 140 F.Supp.2d 233, 236 (N.D.N.Y. 2001) (*quoting Griffin v. Ambika Corp.*, 103 F.Supp.2d 297, 306 (S.D.N.Y. 2000)); *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F.Supp.2d 275, 289 (E.D.N.Y. 2005) (Opining

3

that "[s]ummary judgment … should be granted with caution in employment discrimination cases").

For the reasons set forth below, Defendant's Motion for Summary Judgment should be denied in its entirety.

## II.   Material Issues of Fact Preclude Dismissal of Plaintiff's Disability Discrimination Claims

Disability discrimination claims under the ADA and the SHRL are subject to the same burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S.792 (1973). *See Rodal v. Anesthesia Grp. Of Onondaga, P.C.*, 369 F.3d 113, 117 n. 1 (2d Cir. 2004); *Hulett v. City of Syracuse*, 253 F.Supp.3d 462, 483 (N.D.N.Y. 2017) (analyzing ADA and SHRL claims in tandem).

Thus, the initial burden is on Plaintiff to first establish a prima facie case of discrimination. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Once the plaintiff establishes a prima facie case of discrimination,  "the burden flips to the defendant to 'offer … a legitimate non-discriminatory reason for the [adverse action].'" *Hensel v. City of Utica*, at *8 (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d at 169). Finally, after the defendant proffers a legitimate, non-discriminatory reason for the adverse action, the burden shifts back to the plaintiff to demonstrate that the proffered reason is mere pretext for discrimination. *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019).

### A.  Plaintiff's Prima Facie Case

To establish a *prima facie* claim of disability discrimination, Plaintiff must demonstrate that: "(1) he[r] employer is subject to the ADA [and the SHRL]; (2) [s]he was disabled within the meaning of the ADA [and the SHLR]; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse

4

employment action because of [her] disability." *Hensel v. City of Utica*, No. 6:15-cv-0374 (LEK/TWD), 2020 WL 1451579, at *6 (N.D.N.Y. Mar. 25, 2020) (quoting *Petrone v. Hampton Bays Union Free Sch. Dist.*, 568 F.App'x 5, 7 (2d Cir. 2014). *See also, Gray v. Onondaga-Cortland-Madison BOCES*, No. 5:16-cv-973 (NAM/TWD), 2020 WL 1029022, at *6 (N.D.N.Y. Mar. 3, 2020). Notably, Plaintiff's burden of proof in a discrimination action is *de minimis* at the *prima facie* stage. *See Graham v. Long Island R.R.*, 230 F.3d 38, 40 (2d Cir. 2000) ("The burden a plaintiff, alleging that [s]he was discriminated against by [her] employer, carries to survive a summary judgment motion at the *prima facie* stage is a minimal one"); *Treglia v. Town of Manilus*, 313 F.3d 713, 719 (2d Cir. 2002).

Here, Defendant argues that Plaintiff's disability discrimination claims must fail because Plaintiff has failed to demonstrate that she was subject to adverse employment action because of her disability. Defendant's arguments should be rejected.

### i. Inference of Discrimination

In order to show an inference of discrimination – that the adverse actions were <u>because</u> of Plaintiff's disability – a plaintiff must put forth some evidence "from which a rational fact finder could infer that [the employer's actions] were motivated by [her disability]." *Williams v. Palladia, Inc.*, 2009 WL 362100, at *7 (S.D.N.Y. Feb. 10, 2009). Notably, the standard used to establish an inference of discrimination is a "flexible [one] that can be satisfied differently in differing factual scenarios." *Ellis v. Century 21 Dep't Stores*, 975 F.Supp.2d 244, 271 (E.D.N.Y. 2013). While Defendant seemingly contends that the *only* way to show an inference of disability discrimination is by comparison to those outside the protected class, the reality is that "no one particular type of proof is required to show … an inference of discrimination." *Id*.

In determining whether an inference of discrimination exists, "the court must be alert to the fact that employers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). *See also*, *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999). Therefore, most plaintiffs must rely on circumstantial evidence. *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Here, the record contains sufficient evidence from which a reasonable juror could conclude Plaintiff was subject to adverse action and treatment on the basis of her disability. Specifically, the record reflects that: (i) Plaintiff's immediate supervisor, Lindsay, made repeated comments regarding Plaintiff's absences and use of personal and vacation time which was the direct result of Plaintiff's disability and cancer treatments, (ii) referenced Plaintiff's personal medical information in her performance review which Plaintiff had to petition to have removed; (iii) Plaintiff's supervisor, Allen, told Plaintiff that her disability and need to work under a flexible work agreement for disability accommodations was the cause of Plaintiff's alleged performance issues; (iv) Defendant repeatedly passed up the chance to properly reclassify Plaintiff's pay and compensation even though Plaintiff's role following her layoff was classified at a higher pay band than that offered to Plaintiff; (v) Plaintiff was not offered the same chance to discuss her compensation and job status for the role she was offered while on disability leave where she was offered such opportunities prior to her cancer diagnosis; (vi) complaints regarding Plaintiff's alleged performance deficiencies did not occur until after Plaintiff's cancer diagnosis and further need for accommodations; and (vii) Lindsay openly expressed her disdain for accommodating Plaintiff's disability during an open meeting with HR and Plaintiff wherein Defendant's HR managers acquiesced to a review of Plaintiff's accommodations. Such behaviors towards Plaintiff is sufficient to raise an inference of discrimination sufficient. *See Murphy v. New*

*York State Pub. Employees Federation*, 2019 WL 4257261, at *12 (N.D.N.Y. Sept. 9, 2019) (finding supervisor's comments regarding plaintiff's absences from work, references to plaintiff's need for accommodations in counseling sessions, and complaints regarding plaintiff's work after his disability arose were sufficient to demonstrate an inference of discrimination at the prima facie stage).

In addition, as Defendant notes, "[a]n inference of discrimination can arise … from 'the more favorable treatment of employees not in the protected group…'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)(quoting *Liebowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). In order to establish an inference of discrimination, the comparator employee must be "similarly situated in all material respects" to the plaintiff. *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). Notably, to be similarly situate, a comparator need not be identically situated, but only must be similarly situated in all material respects." *Polito v. Tri-Wire Eng'g Solutions, Inc.*, 699 F.Supp.2d 480, 492-93 (E.D.N.Y. 2010). Here, Plaintiff testified that Lindsay repeatedly micromanaged her time card and often changed Plaintiff's time entries related to her use of flexible time or remote work to accommodate her disability. Plaintiff further testified that she confirmed with her colleagues, who were also supervised by Lindsay and whose timecards Lindsay was also tasked with reviewing and approving, that in fact Lindsay had never overly scrutinized or changed their time entries.

Based on the foregoing, a reasonable juror could conclude that Plaintiff has, at a minimum, raised a question of fact as to whether Defendant's actions were because of Plaintiff's disability and Defendant's arguments should be rejected.

### ii. Adverse Action

Defendant argues that Plaintiff cannot show she was subject to any adverse employment action because either (i) the alleged adverse actions do not constitute "material" changes to the terms and conditions of Plaintiff's employment and (ii) those that could qualify as adverse employment actions were not conducted closely in time to Plaintiff's disclosure of her cancer diagnosis and were based on non-discriminatory business justifications. *See* Def. Mem. at p. 15.

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of her employment." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006). Generally, adverse employment actions are considered "material" if they are "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Signer v. Tuffy*, 66 Fed. Appx. 232, 235 (2d Cir. 2003). The United States Supreme Court has noted, "[t]he phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment ... in employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). Significantly, "there is no exhaustive list of what constitutes an adverse employment action." *Grana v. Potter*, 2009 WL 425913, at *12 (E.D.N.Y. Feb. 19, 2009). "Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of adverse." *Richardson v. New York State Dept. of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999).

Notably, a reduction in wages is not required for an employment action to be considered adverse. *See Curran v. All Waste Sys., Inc.*, 2000 WL 639999, at *3 (2d Cir. 2000) (opining that a plaintiff "need not suffer a change in job title, decline in income, or a reduction in benefits in order to establish an adverse job action"). *See also*, *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205, 209-10 (2d Cir. 2006) (holding that lateral transfer may be an adverse action

even where the transfer did not affect employee's salary, benefits, or hours, and employee retained the same title).

Here, at a minimum, the record raises a question of fact regarding Plaintiff's subjection to an adverse employment action. Specifically, the record demonstrates that Plaintiff: (i) was micromanaged and overly scrutinized by her supervisor in a way not experienced by her similarly situated colleagues; (ii) was often outright and frequently retroactively denied the right to use her disability accommodations as outlined in her various flexible work agreements and later formal disability accommodations; (iii) had her performance unfairly scrutinized and told that her accommodations were the source of her problems; (iv) was denied hours worked remotely or time off under Plaintiff flexible work agreements which affected Plaintiff's  compensation as an hourly employee and the availability of Plaintiff's ability to use paid personal and vacation time; and (vii) was denied the use of available donated leave time to cover her disability related absences which which affected Plaintiff's compensation as an hourly employee.

Defendants argue that such employment actions cannot constitute materially adverse changes as a matter of law; however, it is well settled that such actions may constitute adverse actions under the law when viewed in total and accompanied by other negative effects. *See Opoku v. Brega*, No. 15-cv-2213, 2016 WL 5730807, at *7 (S.D.N.Y. Sept. 30, 2016) ("[E]xcessive scrutiny, criticism, and negative evaluations of an employee's work are not materially adverse employment actions unless such conduct is accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss"); *Walsh v. N.Y.C. Housing Auth.*, 828 F.3d 70, 76 (2d Cir. 2016) (holding that employment discrimination matters must be analyzed under the totality of the evidence and finding that "no one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact…" to find in favor of the plaintiff). Here, Plaintiff has

alleged more than just that she was subjected to negative performance evaluations and excessive scrutiny. The record reflects that such evaluations, criticisms, and scrutiny resulted in Plaintiff's time being docked and changed and her available time off being denied to her, which affected her compensation and available benefits (i.e. vacation and personal time) as an hourly employee.

Accordingly, a reasonable juror could conclude that Plaintiff has, at a minimum, raised a question of fact as to whether she suffered adverse employment action and Defendant's arguments should be rejected.

## B. Pretext

Defendant offers three purportedly legitimate basis for the actions taken against Plaintiff: (i) that Plaintiff was not promoted to a higher pay band due to concerns about her ability to perform well in her position; (ii) that Plaintiff's role was eliminated as part of the larger merger of the schools into one; and (iii) that Plaintiff was not hired back following her layoff because of the availability of better qualified applicants. *See* Def. Mem. At pp 16-17[i]. For purposes of this motion *only*, Plaintiff assumes that Defendant's proffered reasons for the actions taken against Plaintiff are sufficient to carry Defendant's burden under the *McDonnell Douglas* burden-shifting analysis at this stage. Here, Defendant conclusively argues that Plaintiff cannot show pretest or but for causation because, essentially, Plaintiff could not possibly rebut Defendant's proffered justifications.

A showing of pretext may be demonstrated "either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima face case, without more." *Gray v. Onondaga-*

---

[i] Notably, having determined that the docking of Plaintiff's hours, excessive scrutiny of Plaintiff's timecard and work, and the statements and references to Plaintiff's disability and accommodations during discussions of Plaintiff's performance do not constitute adverse actions and therefore does not offer any justification for such actions. Accordingly, Defendant has waived its right to offer a justification for such actions on reply.

*Cortland-Madison BOCES*, at \*7 (quoting *Sista v. CDC Ixis N. Am., Inc.*, at 173). Moreover, in demonstrating pretext, a plaintiff "may rely on evidence comprising [her] prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations." *Gray v. Onondaga-Cortland-Madison BOCES*, at \*7. Notably, a plaintiff need not show that the employer's proffered reasons are false. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

In addition, to survive summary judgment the plaintiff must show a genuine issue of fact that her disability was the "but-for" cause of the adverse action under the ADA. *See Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019), *petition for cert. filed* (U.S. Dec. 6, 2019) (No. 19-732) ("the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action"). Notably, "'but-for' causation does not require proof that [discrimination] was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the [discriminatory] motive." *Murphy v. New York State Pub. Employees Federation*, 2019 WL 4257261, at \*12 (N.D.N.Y. Sept. 9, 2019).

Finally, it should be noted that the issue of pretext is "ordinarily for the jury to decide at trial rather that for the judge to determine on a motion for summary judgment." *Shain v. Ctr. for Jewish History, Inc.*, 418 F.Supp.2d 360, 366 (S.D.N.Y. 2005). Similarly, whether a plaintiff's membership in a protected category was the "but for" cause of a defendant's actions is typically an issue for the jury, not a decision to be made by the judge on a motion. *See Zagaja v. Vill. Of Freeport*, 2015 WL 3507353 (E.D.N.Y. June 3, 2015).

Here, based on the record evidence, a reasonable juror could conclude that Defendant's proffered justifications are mere pretext and Plaintiff's disability with the but for cause of the adverse actions against her.

Defendant contends that Plaintiff was not offered a promotion to a higher paying scale or pay-band due to concerns over Plaintiff's performance. However, Defendant artfully omits that such concerns, as testified to be Plaintiff's former supervisor and Human resources representative, from Defendant's belief that Plaintiff absences and remote work schedule caused her to not be properly trained. Moreover, the record reflects that Plaintiff's absences, including her time off and time working from home were caused by her disability. Defendant cannot use the manifestations of Plaintiff's disability as a justification for taking adverse actions against her. *See Hampson v. State Farm Mut, Auto Ins. Co.*, 2015 WL 12733387, at *15 (N.D.N.Y. Mar. 26, 2015) (holding that basing plaintiff's termination on plaintiff's absences was not a sufficient justification where "plaintiff's absences were a manifestation of her disability [and therefore] cannot be separated from the disability itself"); *Teahan v. Metro-N. Commuter R.R. Co.*, 951 F.2d 511, 516 (2d Cir. 1991); *Borkowski v. Valley Central Sch. Dis't*, 63 F.3d 131, 143 (2d Cir. 1995) (holding that an adverse action "for performance inadequacies resulting from disability amounts to a discharge solely because of the disability"); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2006). Thus, arguing that Plaintiff did not receive a promotion to a higher pay band because there were concerns over her performance because of her remote work schedule and absences caused by her disability is legally the same as saying Plaintiff did not get a promotion to a higher pay band because of her disability and Defendant's motion should be denied.

Defendant further contends that the elimination of Plaintiff's position and Defendant's failure to rehire Plaintiff was due to the merger of three colleges and the independent decision to hire allegedly

12

more qualified applicants. However, the record reflects that Plaintiff was qualified to assume the available roles, particularly the role which was in essence the same role Plaintiff had been performing in her Data Analyst role. But was not hired back into those roles. Moreover, the record reflects that there was an opportunity for Defendant to transfer Plaintiff into the new role without having to go through the application and interview packet and there is no evidence that this option was ever considered by Defendant, despite Plaintiff noting her interest in taking over the role.

Based on the foregoing, a reasonable juror could conclude that Plaintiff has, at a minimum, raised a question of fact as to her disability discrimination claims and Defendant's motion should be denied.

## III. Material Issues of Fact Preclude Dismissal of Plaintiff's Hostile Work Environment Claims

In order to establish a hostile work environment, a plaintiff must demonstrate: (1) she is a member of a protected class; (2) she experienced unwelcome harassment; (3) the harassment was based on her membership in the protected class; and (4) the harassment was severe or pervasive enough to create a hostile work environment. *Ewing v. Coca Cola Bottling Co. of N.Y., Inc.*, 2001 WL 767070, at *7 (S.D.N.Y. June 25, 2001). "To determine whether an incident or series of incidents is "sufficiently severe or pervasive to alter the conditions" of a plaintiff's work environment, [the Court] "must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boonmalert v. City of New York*, 721 Fed.Appx. 29, 33 (2d Cir. 2018).

On a motion for summary judgment, the question for the court is simply whether a reasonable fact-finder could conclude, considering all the circumstances, "that the harassment is of such quality or quantity that a reasonable employee would find the conditions of her

13

employment altered for the worse." *Id*. Even where multiple actions taken by an employer are not individually sufficient to create a hostile working environment, "an accumulation of seemingly minor incidents" may combine to satisfy the standard. *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002).

Finally, it should be noted that the Second Circuit has cautioned that because the issue of harassment in a hostile work environment is a "mixed question of law and fact," it is "especially well-suited for jury determination." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 605 (2d Cir. 2006 )(*quoting Richardson v. New York State Dept. of Corr. Servs.*, 180 F.3d 426, 439 (2d Cir. 1999)); *see also, Patterson v. Cnty. of Oneida, New York*, 375 F.3d 206, 227 (2d Cir. 2004) ("Where reasonable jurors could disagree as to whether alleged incidents of ... harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law").

Defendant argues that Plaintiff's hostile work environment claims must fail because the record fails to show incidents which are objectively 'severe or pervasive' enough to alter Plaintiff's work environment for the worse. Defendant's' argument should be rejected.

"The fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000). Indeed, the work environment does not need to be deemed "unendurable" or "intolerable" in order to be deemed "hostile," and the Second Circuit has "repeatedly cautioned against setting the bar too high." *Id*.

Here, Plaintiff has, at a minimum, raised a triable issue of fact from which a reasonable juror could conclude Plaintiff's work environment was sufficiently objectively severe and or pervasive. Contrary to Defendant's contention, the discriminatory behavior experienced by

Plaintiff was more than sporadic and constituted a continuous and ongoing barrage throughout the majority of Plaintiff's tenure under Lindsay's supervision. Specifically, the record reflects that while under Lindsay's supervision and thereafter, Plaintiff, *inter alia*, (i) was subjected to routine questioning regarding her need for accommodations; (ii) criticism regarding Plaintiff's attempted use of her disability accommodations as provided for in Plaintiff's various flexible work agreements; (iii) was subjected to docking and changing of her time card by Lindsay for time worked remotely or time off taken in light of her disability and cancer treatments; (iv) was accused of poor performance and a lack of the necessary skill set for her job based off the manifestations of her disability; (v) discouraged from bringing formal complaint or seeking formal accommodations from Defendant's Medical Leaves Administration and Human Resources in response to her repeated complaints of a failure to accommodate and discrimination; and (vi) had her need for accommodations openly challenged by her supervisors in a meeting with human resources and also privately during one on one discussions.

Further, it can hardly be disputed that many of the harassing incidents described above were committed on the basis of Plaintiff's disability, as Defendant's actions relate directly to Plaintiff's need for accommodations and attempts to use the accommodations agreed upon with Defendant and her manager, Lindsay.

Based on the foregoing, Plaintiff has, at a minimum, raised a triable issue of fact regarding her hostile work environment claims and Defendant's Motion for Summary Judgment should be denied.

## IV.  **Material Issues of Fact Preclude Dismissal of Plaintiff's Failure to Accommodate Claims**

A plaintiff established a prima facie failure to accommodate claim by demonstrating that "(1) plaintiff is a person with a disability under the [statutes]; (2) an employer covered the statute[s]

15

had notice of [plaintiff's] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Blundell v. Nihon Kohden Am.*, 2017 WL 318842, at *10 (N.D.N.Y. Jan. 23, 2017). *See also*, *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015). Normally, where the employer has "already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment…" *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d at 94. Moreover, "the ADA imposes liability for … discriminatory refusal to undertake a feasible accommodation…" *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 100 (2d Cir. 2009).

Defendant argues that Plaintiff's failure to accommodate claims must fail because Plaintiff has failed to identify a facially reasonable accommodation that Defendant refused to provide, and argues that Defendant went above and beyond to accommodate Plaintiff. In essence, Defendant argues that if Plaintiff experienced any hardship is taking advantage of accommodations, it was all Plaintiff's fault. Defendant's argument should be rejected.

First, Defendant argues that it "accommodated [Plaintiff] in multiple ways" following disclosure of Plaintiff's cancer diagnosis. *See* Def. Mem. At 23. The record reflects that Plaintiff notified Defendant of her disability and her need for accommodations, which, in the beginning, were negotiated through the institution of flexible work agreements between Plaintiff and her then-supervisor, Lindsay. The record also reflects that at least one of Plaintiff's supervisors, Allen, was taken aback when Plaintiff required continuing accommodations after Plaintiff's radiation treatment ended, the time when Allen believed Plaintiff "rang the bell" on her cancer (i.e. completed all cancer treatment). However, the record also demonstrates that despite agreeing to work accommodations, based on Plaintiff's medical needs, and entering into various flex work agreements with Plaintiff to memorialize such accommodations, time and time again Plaintiff's supervisors, including and

16

especially Lindsay, failed to actually allow Plaintiff to take advantage of such accommodations and frequently denied Plaintiff's right to use the flexible work agreements when needed. Thus, the record reflects that while Defendant appeared to agree to accommodate Plaintiff's disability, such agreement was only on paper as, in reality, Lindsay continued to refuse to accommodate Plaintiff's disability and medical related needs.

Moreover, Defendant makes much ado of the fact that Plaintiff did not immediately request formal accommodations and incorrectly contends that Defendant had encouraged Plaintiff to seek formal accommodations. However, the record reflects that, in fact, the only reason Plaintiff did not immediately seek formal accommodations was because she was discouraged from doing so and told that formal accommodations would not be necessary. Indeed, the only encouragement Plaintiff received was to avoid filing for formal accommodations and to work it out with the very person who was denying her accommodations under her existed flexible work agreements, Lindsay.

Defendant further contends that Plaintiff's real issue was with the, in Defendant's eyes, reasonable requests for advance notice and accurate time keeping Plaintiff's supervisors implemented in conjunction with the flexible work agreements. However, the record reflects that the flexible work agreements were *not* just limited to days of Plaintiff's appointments and treatments, although that is how Lindsay treated them; that Plaintiff did in fact give advance notice when she was able to in accordance with the flexible work agreements; that even when Plaintiff did give as much notice as she was able, she was denied her accommodations under the flexible work agreements; and that ultimately, Plaintiff was not required to always get advanced approval as the letter confirming her formal accommodations states that in cases where advance notice is not possible, Plaintiff need only tell her supervisors that she *will* be using her accommodations. Moreover, the reasonableness, if any, of Defendant's requests for advance notice and the reasonableness of how far in advance such notice was

17

to be in order for Plaintiff to use her accommodations is not for the court or Defendant to decide – it is for the jury.

Based on the foregoing, Plaintiff has demonstrated that Defendant refused to undertake and implement a reasonable accommodation and thus Defendant's motion for summary judgment should be denied. *See Jones v. City of New York*, 2020 WL 91532, at *6 (S.D.N.Y. Jan. 8, 2020) (denying summary judgment where defendant employer demonstrated it had approved reasonable accommodations for plaintiff but the plaintiff was unable to take advantage of them).

**V.** **Material Issues of Fact Preclude Dismissal of Plaintiff's Retaliation Claims**

Claims for retaliation under the ADA and SHRL are analyzed using the same burden-shifting framework established for Title VII cases." *Hampson v. State Farm Mut, Auto Ins. Co.*, 2015 WL 12733387, at *16 (N.D.N.Y. Mar. 26, 2015) (*quoting Treglia v. Town of Manlius*, 313 F.2d 713, 719 (2d Cir. 2002)). Thus, "a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of [retaliation]; it is then the defendant's burden to proffer a legitimate nondiscriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful [retaliation]." *Id.*

To establish a prima facie case of retaliation under the SHRL and the ADA, Plaintiff must establish that: "(1) [s]he engaged in an activity protected under [the statutes]; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Blundell v. Nihon Kohden America*, 2017 WL 318842, at *11 (N.D.N.Y. Jan. 23, 2017). Here, Defendant contends that Plaintiff's retaliation claims must fail because Plaintiff has failed to demonstrate that

she was subject to adverse employment action or that any adverse actions were causally connected to her engagement in protected conduct[ii]. Defendant's arguments should be rejected.

"The definition of 'adverse employment action' in the retaliation context is 'not limited to discriminatory actions that affect the terms and conditions of employment.'" *Cusher v. Mallick*, 2020 WL 109510, at \*19 (N.D.N.Y. Jan. 9, 2020) (*quoting Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)). In the retaliation context, adverse employment actions also include "harms that might well have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (*quoting Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005)). Under this standard "material adversity is to be determined objectively based on the reactions of a reasonable employee." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 741 F.3d 11, 25 (2d Cir. 2012). Moreover, "alleged acts of retaliation must be evaluated separately and in the aggregate, as even trivial acts may take on greater significant when they are viewed as part of a larger course of conduct." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 569 (2d Cir. 2011). *See also*, *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).

As discussed in the discrimination context, Plaintiff has, at a minimum, raised a question of fact regarding whether she has suffered an adverse employment action under the more permissive definition under her retaliation claims in that Plaintiff has established that not only was she subjected to negative performance appraisals and negative comments directly .related to her need for disability accommodations, but was also subjected to the denial of her right to use her disability accommodations as outlined in her various flexible work agreements and later formal

---

[ii] Defendant argues that, at best, Plaintiff engaged in protected conduct when she filed an inquiry with the United States Equal Employment Opportunity Commission in August of 2017 and when she complained numerous times internally that her accommodations under her flexible work agreements were not being met. However, it is well-settled that a plaintiff engages in protected activity under the ADA when he or she requests accommodations, not only when he or she complains that such accommodations are not being met. *See Hampson v. State Farm Mut, Auto Ins. Co.*, 2015 WL 12733387, at \*17 (N.D.N.Y. Mar. 26, 2015). Thus, a reasonable juror could find that Plaintiff first engaged in protected activity as early as February 2, 2017, when she entered into the First Flex Agreement.

disability accommodations; and her ability to work remotely or take time off under which affected Plaintiff's compensation as an hourly employee and the availability of Plaintiff's ability to use paid personal and vacation time.

Moreover, as Defendant concedes, failure to be promoted to a higher pay band could qualify as an adverse employment action. Such action, although it occurred prior to Plaintiff's request for accommodations, was repeatedly confirmed after multiple complaints that setting Plaintiff at the minimum pay scale was discriminatory.

Moreover, "a plaintiff can demonstrate a causal connection either "'(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *See Murphy v. New York State Pub. Employees Federation*, 2019 WL 4257261, at *15 (N.D.N.Y. Sept. 9, 2019) (*quoting Littlejohn v. City of New York*, 795 F.3d 289, 319 (2d Cir. 2015)).

Plaintiff's burden to establish a causal connection is "a light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement." *Raniola v. Bratton*, 243 F.3d at 624. *See also*, *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005). While there is no bright line rule defining the time frame between protected activity and adverse action sufficient to demonstrate retaliation, the Second Circuit has repeatedly held time lapses greater than six months sufficient to show a causal connection at the *prima facie* stage. *See Quinby v. WestLB AG*, 2007 WL 1153994 at *13; *Raniola*, at 624 (jury could find causal connection despite more than 14-month gap between adverse action and protected activity); *Mandell v. Cnty. of Suffolk*, 316 F.3d

20

at 384 (jury could find causal connection despite 5-year gap between protected activity and failure to promote); *McKenzie v. Nicholson*, 2009 WL 179253, at *5 (E.D.N.Y. Jan. 26, 2009) (jury could find causal connection despite 13-month gap); *Batyreva v. New York City Dept. of Educ.*, 2008 WL 4344583, at *14 (S.D.N.Y. Sept. 18, 2008)(jury could find causal connection despite 1-year gap); *Wallace v. Suffolk Cnty. Police Dept.*, 396 F.Supp. 251, 262 (E.D.N.Y. 2005)(jury could find causal connection despite 3-year gap); *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) ("The seven-month gap between [plaintiff's] filing of the instant lawsuit and the decision to terminate her employment privileges is not prohibitively remote"); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45 (2d Cir. 1980) (finding lapse of eight months between an EEOC complaint and retaliatory act indicated a causal connection); *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding "the passage of ***only six months*** between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers … [wa]s sufficient to support an inference of a causal connection") (emphasis added); *Leung v. New York Univ.*, 2010 WL 1372541, at *6 (S.D.N.Y. March 29, 2010) (ten month gap); *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001) (five month gap).

Here, the record demonstrates that although Plaintiff was able to work relatively issue free under her first flexible work agreement, after entering her second flexible work agreement – at a time when Defendant expected she would be able to return without the need for accommodations – issues almost immediately began with Lindsay. Moreover, the record demonstrates that Lindsay pressured Plaintiff to forego her accommodations and made direct and open statements about her dissatisfaction with having to continue to accommodate Plaintiff's disability. Accordingly, a reasonable juror could conclude that there was a causal connection between Plaintiff's engagement in

protected activity (i.e. her request for accommodations, as well as her complaints of discrimination) and the adverse actions taken against her.

Defendant further argues that even if Plaintiff has demonstrated a *prima facie* case of retaliation, Plaintiff's claims must still be dismissed because Defendant had a legitimate reason for any potential employment action. For the reasons stated above, Defendant's proffered justification for the actions taken against Plaintiff are either flawed as a matter of law or mere pretext for retaliation. *See* Point II(B), *supra*.

Based on the foregoing, Defendant's motion should be denied.

## VI.   Defendant Improperly Seeks Summary Judgment on Plaintiff's Claim for Damages.

In its motion for summary judgment, Defendant seeks summary judgment on all categories of damages allegedly unavailable to Plaintiff based solely on Defendant's assertion that Plaintiff would not be able to prove such damages at trial, despite the fact that the damages Defendant seeks to preclude Plaintiff from recovering seem to include back pay damages (at least to the extent of limiting Plaintiff's potential award), punitive damages, and damages for emotional distress. In essence, Defendant asks the Court to assess the relevance and weight of the evidence regarding Plaintiff's potential damages and find it insufficient to support an award of damages. Notably, Defendant offers no authority for the granting of such relief on a pre-trial motion for summary judgment.

Regardless of Defendant's weighing of the evidence and opinion as to its support for Plaintiff's claim for damages, it is well-settled that the determination of damages is a function of the jury at trial, as the jury is the only entity with the authority at trial to weigh and assess the strength and relevance of the record evidence. *See DeGeorge v. LTD Financial Servs., L.P.*, 2008 WL 905913, at *5 (W.D.N.Y. Mar. 31, 2008) (denying summary judgment in defendant's favor

on plaintiff's claim for damages and holding that although evidence of a plaintiff's damages may be weak, if it exists at all in the record then the plaintiff "is entitled to have a jury determine what, if any, damages he is due"); *Arista Records LLC., v. Lime Grp., LLC.*, 2011 WL 1542560, at *3, n.4 (S.D.N.Y. Apr. 21, 2011) (finding that "[o]nly the jury can determine whether plaintiffs are entitled to punitive damages"); *Ventura Assoc., Inc. v. Internat'l Outsourcing Servs., Inc.*, 2008 WL 2073628, at *6 (S.D.N.Y. May 14, 2008) (holding that the "amount of damages necessary to [award the plaintiff] … must be determined by a jury"); *Carrero v. New York City Hous. Autho.*, 890 F.2d 569, 580 (2d Cir. 1989) (finding that "an award of backpay damages is the rule, not the exception"). In light of the foregoing, Defendant's motion should be denied.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment should be denied in its entirety, and Plaintiff should be awarded such other relief as the Court deems just and proper.

Dated: April 14, 2020
New York, New York

Respectfully Submitted,

/s/ Gabrielle Vinci
Gabrielle Vinci, Esq.